IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONNA J. GRANT, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 06-4323 |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE,[1] | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

### MEMORANDUM

Giles, J.                                                                                             January 4, 2008

### I.   INTRODUCTION

Donna J. Grant ("Plaintiff") seeks judicial review pursuant to 42 U.S.C. § 405(g) for review of the final decision of Michael J. Astrue, Commissioner of the Social Security Administration ("Commissioner"), denying her claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433.  Plaintiff filed a Request for Review with this court seeking reversal of the decision of the Administrative Law Judge (ALJ) and remand for further development and consideration of the evidence.  Defendant filed a Response to the Request for Review arguing that substantial evidence supports the ALJ's determination that Plaintiff retained the capacity to perform her past work as a data entry clerk and was therefore not disabled.

For the reasons set forth below, Plaintiff's motion is granted in part.  The decision of the

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security and, pursuant to Fed. R. Civ. P. 25(d)(1), should be substituted for former Commissioner Jo Anne B. Barnhart as the official defendant in this matter.

Commissioner is vacated and the matter is remanded to the Commissioner for further proceedings consistent with this Memorandum and the related Order.

## II.   PROCEDURAL HISTORY

Plaintiff filed an application for DIB on June 13, 2003, alleging that she had been disabled since February 10, 2003 due to status post brain surgery for a subarachnoid aneurysm.[2] (R. 53.)  On July 6, 2004, the state agency denied her application, and Plaintiff requested review by an ALJ.  (R. 41.)  Plaintiff, represented by counsel, appeared and testified at an administrative hearing before the ALJ on January 26, 2006.  (R. 15.)  A Vocational Expert (VE) also testified. (R. 34-42.)

On March 21, 2006, the ALJ issued a ruling adverse to Plaintiff, finding that she was not disabled within the meaning of the Act and retained the ability to return to her past relevant work as a data entry clerk, as well as the ability to perform a significant range of medium work.  (R. 15.)  Plaintiff submitted a request for review by the Appeals Council , which was denied on July 25, 2006.  (R. 5.)  As a result, the ALJ's determination that Plaintiff is not disabled is the final decision of the Commissioner.  Plaintiff filed her complaint in district court on September 26, 2006.

---

[2] Citations to the administrative record will be indicated by "R." followed by the page number.

### III.   DISCUSSION

A.  Standard of Review

The role of the court upon judicial review is to determine whether substantial evidence in the administrative record supports the Commissioner's final decision.  See Stunkard v. Sec'y of Health & Human Serv., 841 F.2d 57, 59 (3d Cir. 1988).  The United States Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted).  It is more than a mere scintilla of evidence but may be less than a preponderance.  See Stunkard, 841 F.2d at 59.  This court's review is not de novo, and the evidence of record will not be weighed a second time.  See Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986), cert. denied, 482 U.S. 905 (1987).

B.      Burden of Proof in Disability Proceedings

In order to be found "disabled" under the Act, a plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  20 C.F.R. § 416.905(a).

The Social Security Administration (SSA) has promulgated regulations establishing a five-step sequential evaluation for determining whether a claimant is disabled.  Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  At step one, the Commissioner must determine whether a claimant is engaged in "substantial gainful activity."  20 C.F.R. § 416.920(b); Plummer, 186 F.3d at 428.  If a claimant is, then she is not disabled.  Id.  At step two, the

Commissioner must determine whether claimant suffers from a "severe" impairment or combination of impairments. 20 C.F.R. § 416.920(c). If not, the claimant is determined not to be disabled. Id. At step three, the Commissioner must determine whether the claimant's severe medical impairment(s) meet or equal the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If so, the claimant is disabled. Id. If the claimant's impairment(s) do not meet a listed condition, the Commissioner proceeds to step four to determine whether a claimant retains the residual functional capacity (RFC) to perform her past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant retains such capacity, she is not disabled. If not, the Commissioner proceeds to step five. At this final step, the burden of production shifts to the Commissioner to demonstrate that there are jobs existing in significant numbers in the national economy that the claimant can perform, "consistent with her medical impairments, age, education, past work experience and residual functional capacity." Plummer, 186 F.3d at 428; 20 C.F.R. § 416.920(e), (g).

C.      The ALJ's Decision

   1.   *The ALJ's sequential evaluation.*

In the ALJ's written decision, he analyzed Plaintiff's claim in accordance with the sequential evaluation described above. (R. 18-26.) At the second step, he determined that her status-post subarachnoid hemorrhage and depression are severe impairments. (R. 20.) At the third step, however, the ALJ found that Plaintiff's impairments did not meet the criteria found in the Listing of Impairments to Appendix 1, Subpart P, Regulations No. 4 (20 C.F.R. § 404.1520(d)) (commonly referred to as "the Listings"). (R. 20.) Having found that Plaintiff

retained the residual functional capacity (RFC) for lifting and carrying no more than 50 pounds at a time, with frequent lifting and carrying of objects weighing up to 50 pounds and an inability to follow detailed job instructions, the ALJ determined at the fourth step that Plaintiff retained the ability to perform her past relevant work as a data entry clerk.  (R. 23.)  The VE characterized that work as sedentary low-level and semi-skilled.  (R. 509.)  The ALJ proceeded to step five and concluded that Plaintiff had the RFC to perform a significant range of medium level work and that there are a significant number of jobs in the national economy that she could perform.  (R. 25.)

> 2. *The ALJ failed to state whether he accepted the opinions of Plaintiff's treating psychiatrist.*

Plaintiff's treating psychiatrist, Dr. Villaluz[3], completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) on January 5, 2006.  (R. 457-58.)  Dr. Villaluz indicated that Plaintiff's abilities were "poor"[4] with respect to the following work-related mental activities: maintain attention and concentration for extended periods; work with or near others without being distracted by them; complete a normal workday or workweek; perform at a consistent pace; respond appropriately to changes in the work setting; set realistic goals or make plans independently of others.  (R. 457-58.)  Dr. Villaluz rated Plaintiff's abilities with respect to other work-related mental activities as "good" or "fair."  The ALJ summarized Dr. Villaluz's report as follows:

---

[3] While the ALJ, in his decision, refers to Plaintiff's treating psychiatrist as "Dr. Villabuz", Plaintiff, in her pleadings refers to her psychiatrist as "Dr. Villaluz."  The court will use Plaintiff's spelling in this memorandum.

[4] No useful ability to function.  (R. 457.)

> [T]he claimant's ability to remember, understand, and carry out simple instructions was good. Her ability to understand, remember, and carry out detailed instructions was fair. Her ability to maintain attention and concentration for extended periods, complete a normal workday or workweek, and to perform at a consistent pace, was poor. Her ability to interact appropriately with the public was good. Her ability to accept instructions and respond appropriately to criticism from supervisors, and to get along with co-workers, was fair (Exhibit 23F).

(R. 23.) The ALJ then concluded that "[t]his assessment supports a finding that the claimant can do a job involving simple job tasks." (R. 23.) From this final sentence, there is an inference that the ALJ fully accepted the report, yet in the hypothetical scenario the ALJ posed to the VE, he listed "no detailed instructions" as the only mental limitations, failing to include the mental limitations assessed by Dr. Villaluz. (R. 509.) It is unclear to the court what weight, if any, the ALJ accorded to Dr. Villaluz's opinion.

This ambiguity is problematic. First, if the ALJ rejected the opinions of Dr. Villaluz, his reasoning for doing so is not apparent to the court. Second, if the ALJ accepted the opinions of Dr. Villaluz, he failed to include all of these mental limitations in the hypothetical scenario posed to the VE, upon which his disability determination rests.

It is a fundamental principle that an ALJ should give the reports of a treating physician great weight, particularly "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Plummer, 186 F.3d at 429 (quoting Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987)). The regulations explain why the well-supported opinions of a claimant's treating physician are entitled to more weight:

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the

> medical evidence that cannot be obtained from the objective
> medical findings alone or from reports of individual examinations,
> such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2). An ALJ may reject outright the opinions of a treating physician "only on the basis of contradictory medical evidence." Plummer, 186 F.3d at 429 (citing Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985)). When there is a conflict in the medical evidence, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." Plummer, 186 F.3d at 429 (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)). The extent to which supporting explanations are provided for a treating physician's opinions may impact the weight an ALJ accords that treating physician's opinion. Plummer, 186 F.3d at 429 (citing Newhouse, 753 F.2d at 286)). An ALJ may not reject the treating physician's assessment due to her own "credibility judgments, speculation or lay opinion." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000)(citations omitted). Here, if the ALJ did in fact reject Dr. Villaluz's report, he did so without any explanation, and this court, upon review, cannot tell whether the opinion was rejected for a permissible reason, such as contradictory medical evidence, or an impermissible reason, such as lay opinion.

It is well-established that the hypothetical question posed to the VE must include all of a claimant's impairments and limitations that are supported by the record in order for the VE's response to be considered substantial evidence in support of a disability determination. See Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005); Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). The ALJ's hypothetical scenario only included a mental limitation of "no detailed instructions." Plaintiff's attorney posed a hypothetical question to the VE that incorporated the limits reflected in Dr. Villaluz's report. (R. 510.) The VE responded that

>[O]f largest concern would be completing a normal work day or work week, which goes to the heart of whether or not she can do competitive employment.  <u>He has rated that as poor, and with that rating there would be no competitive employment</u>.  Also of concern would be the performing at a consistent pace, responding appropriately to changes in the work setting, those would also be of concern.

(R. 510-11)(emphasis added).  Therefore, if the ALJ credited Dr. Villaluz's opinion that Plaintiff cannot complete a normal work day or work week, the VE's opinion is that there is no competitive employment that Plaintiff can perform.  If, in fact, the ALJ credited Dr. Villaluz's report, substantial evidence does not support his determination that Plaintiff is not disabled since the ALJ cannot base such a determination on an incomplete hypothetical posed to a VE.  The lack of clear findings about Dr. Villaluz's report requires remand of this matter.  The ALJ must analyze Dr. Villaluz's report and clearly explicate what weight is accorded that report and state a reason for any finding.  Only after the ALJ has conducted a clear and thorough analysis can he continue to a determination of Plaintiff's RFC.[5]

## IV.   CONCLUSION

Having found that remand is appropriate for the foregoing reasons, the court declines to address the remainder of the arguments made by the parties.  The matter must be remanded to the Commissioner, and an appropriate order follows.

---

[5] The court will not review Plaintiff's claim that substantial evidence does not support the ALJ's determination that Plaintiff's foot problems are not severe impairments.  The question of whether the ALJ credited the opinion of her treating psychiatrist must be resolved first.  However, resolution of that issue may impact the prior credibility determinations as to Plaintiff's testimony.  This, in turn, may impact the ALJ's determination of whether or not her foot problems are considered severe.